# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51548-2024

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, September 2025 Term |
| | ) | |
| v. | ) | Opinion filed: February 4, 2026 |
| | ) | |
| LEWIS VANALEN BOREK, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Derrick J. O'Neill District Judge.

The decision of the district court is <u>reversed</u>.

Raúl R. Labrador, Idaho Attorney General, Boise, for Appellant. Kale D. Gans argued.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Respondent. Andrea W. Reynolds argued.

_____

ZAHN, Justice.

The State of Idaho appeals from the district court's order granting Lewis Vanalen Borek's motion in limine. Borek was arrested and charged with driving under the influence. In advance of trial, Borek filed a motion in limine to preclude the State from introducing records the State obtained, including records from the Idaho Prescription Monitoring Program, Ada County Jail, and Star Pharmacy. The records included information about prescription drug orders for mental health medications that medical providers issued to Borek as well as the dates and locations where Borek filled the prescriptions. Borek argued the records were inadmissible under Idaho Rule of Evidence 503(b)(2), Idaho's psychotherapist-patient privilege.

The district court granted Borek's motion and concluded the records constituted confidential communications and were therefore privileged under Rule 503. The district court also determined that statements Borek made to arresting officers at the scene, indicating that he was taking anti-depressant medication, did not waive the privilege because those statements also

constituted confidential communications under the rule. The State filed a motion for permissive appeal, which this Court granted. For the reasons discussed below, we reverse the district court's decision.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 17, 2020, Borek rear-ended another vehicle while driving in Star, Idaho. The driver of the other vehicle called law enforcement and advised them that he believed Borek was intoxicated. Officers arrived at the scene and administered breathalyzer and field sobriety tests to Borek. The breathalyzer returned a reading of .000. However, Borek was unable to perform the sobriety tests and showed other signs of impairment. Borek denied consuming alcohol but admitted that he was on anti-depressant medication. Officers arrested Borek for felony driving under the influence, in violation of Idaho Code sections 18-8004 and 18-8005(9). Officers subsequently acquired a blood sample that showed the presence of prescription medications commonly used to treat mental health conditions.

Borek filed a motion to suppress all evidence obtained as a result of his arrest, arguing that officers violated the Idaho Constitution because they lacked probable cause to arrest him for a felony DUI. The district court denied Borek's motion and Borek subsequently entered a conditional guilty plea reserving his right to appeal the denial of his motion to suppress.

Borek then appealed. The Idaho Court of Appeals reversed the district court in an unpublished decision. *State v. Borek*, No. 49021, 2022 WL 4295418 (Idaho Ct. App. Sept. 19, 2022). It agreed with Borek that his arrest violated the Idaho Constitution because officers lacked probable cause for the felony DUI charge when they arrested him. *Id.*, 2022 WL 4295418, at *6. Consequently, the Court of Appeals determined the district court erred when it denied Borek's motion to suppress. *Id.* Accordingly, the results of Borek's blood test and his statements made to medical staff at St. Alphonsus and Ada County Paramedics were suppressed.

On remand, Borek moved to dismiss the charge and argued that, without the suppressed evidence, the State lacked probable cause to charge him with driving under the influence. The district court denied Borek's motion. The State then filed motions for an order of delivery pursuant to Idaho Criminal Rule 17, seeking to obtain copies of Borek's medical and prescription records from Star Pharmacy and St. Alphonsus Health System. Over Borek's objection, the district court granted the State's motions. The State also obtained, via subpoena, copies of records from the

2

Idaho Prescription Monitoring Program ("PMP"), Ada County Paramedics, and the Ada County Jail concerning Borek. The State provided copies of the records to Borek's counsel.

In advance of trial, Borek filed a motion in limine (the subject of this appeal) to prohibit the State from "using Borek's private medical information." Borek asserted several grounds, only one of which is at issue in this appeal: that the records constituted privileged communications under Idaho Rule of Evidence 503. The records at issue in Borek's motion contained a variety of information concerning his medical conditions and prescription medications:

- The PMP record is a list that indicates the dates on which Borek obtained a particular prescription medication. For each date, the list also includes the prescribing medical provider, the prescribed dose, the pharmacy where Borek obtained the medication, and other identifying information for Borek.

- The Star Pharmacy records similarly concern one medication and include the prescription labels for the medication as well as an informational pamphlet explaining the conditions it treats and adverse side effects.

- The Ada County Paramedics records identified Borek's name and date of birth and indicated that paramedics drew Borek's blood on January 17, 2020.

- The Saint Alphonsus records described Borek's medical history, including his mental health diagnosis and medication lists, medical staff's observations of Borek on the date of the accident (i.e., his mental and physical conditions), and statements he made regarding prescription medications he had taken.

- The Ada County Jail records included: (1) "Questionnaire Reports," containing questions and answers related to Borek's medical and mental health conditions and prescriptions; (2) "Health Services Request" forms that Borek submitted to jail staff concerning his health conditions and medications; (3) a medication administration record that identified all prescription medications that Ada County Jail medical staff administered to Borek; (4) refusal forms that Borek signed when he refused certain medications; and (5) a "Full Patient History" report that detailed a variety of information related to the medical care and assessments that jail staff provided to Borek, including medications that jail medical providers prescribed for him.

In opposition, the State filed a motion asking the district court to dismiss Borek's motion as untimely. The district court denied the State's motion to dismiss and held a hearing on Borek's

3

motion in limine. Borek introduced testimony at the hearing from individuals associated with or employed by the Idaho Board of Pharmacy, the Ada County Jail, and Ada County Paramedics. The testimony that Borek elicited primarily concerned whether each entity considered its records to be confidential under the federal Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 26, 29, and 42 U.S.C.) ("HIPAA").

During the hearing, the district court questioned counsel for the State and Borek about the applicability of Rule 503 and whether the records were "communications" within the meaning of that rule. At the conclusion of the hearing, the district court requested supplemental briefing from the parties on whether the prescription records were statements/communications.

After receiving the parties' supplemental briefing, the district court issued a written order granting Borek's motion in limine and precluding the State from introducing the PMP, Star Pharmacy, Ada County Paramedics, Saint Alphonsus, and Ada County Jail records at trial. Relevant to this appeal, the district court concluded that the prescription information contained in the PMP, Star Pharmacy, and Ada County Jail records constituted confidential communications as that term is defined in Rule 503(a)(4) because the PMP was "necessary for the transmission of the communication" and that Star Pharmacy and the Ada County Jail were "persons participating in [Borek's] diagnosis or treatment . . . ." Finally, the district court addressed whether Borek's statements to law enforcement officers at the accident scene concerning prescription medications waived the privilege and concluded that they did not.

The State moved the district court, pursuant to Idaho Appellate Rule 12(b), for permission to appeal the order granting Borek's motion in limine to this Court. The district court denied the motion. The State then moved this Court for permissive appeal. We granted the motion in part and allowed the State to appeal the district court's decision precluding the State from introducing the PMP, Star Pharmacy, and Ada County Jail records.

## II.     STANDARD OF REVIEW

We review a trial court's decision on a motion in limine for an abuse of discretion. *State v. Buehler*, 173 Idaho 717, 720–21, 547 P.3d 1203, 1206–07 (2024). The abuse of discretion standard requires this Court to determine whether the lower court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the

4

legal standards applicable to the specific choices available to it; and (4) reached its decision by exercise of reason." *Id.* at 721, 547 P.3d at 1207 (citation omitted).

### III.   ANALYSIS

This appeal requires us to determine whether the PMP, Star Pharmacy, and Ada County Jail records are protected by Idaho's psychotherapist-patient privilege rule. That rule grants a patient an evidentiary privilege to prevent the disclosure of the following communications in a criminal action:

> A patient has a privilege in a criminal action to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

I.R.E. 503(b)(2). The rule defines when a communication is considered confidential for purposes of the privilege:

> A communication is "confidential" if not intended to be disclosed to third persons, except persons present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.

I.R.E. 503(a)(4).

The State argues the district court erred when it concluded that the PMP, Star Pharmacy, and Ada County Jail records constituted "confidential communications" under the rule. The State argues that the PMP was not a party "necessary for the transmission of the communication," and that the PMP, Star Pharmacy, and Ada County Jail were not "persons who are participating in the diagnosis or treatment under the direction of a psychotherapist." The State also argues that Borek failed to meet his burden to establish that the records met the other requirements of Rule 503(b)(2). Finally, and in the event we conclude the records are privileged, the State argues that Borek's statements to law enforcement waived the privilege, and the district court erred when it concluded otherwise.

For the reasons discussed below, we agree with the State that Borek's prescription records do not constitute confidential communications under Rule 503(b)(2) and that Borek failed to carry

his burden of establishing that other records from the Ada County Jail meet the requirements of Rule 503(b)(2). We therefore reverse the district court's order granting Borek's motion in limine.

**A. The district court erred when it granted Borek's motion in limine because the PMP and Star Pharmacy records do not constitute "confidential communications" and, while some of the Ada County Jail records *may* constitute "confidential communications," Borek failed to meet his burden of proving the records met the requirements of Rule 503(b)(2).**

To prevail on his motion in limine, Borek was required to establish that the PMP, Ada County Jail, and Star Pharmacy records met the three elements identified in Rule 503(b)(2): (1) that the records were confidential communications, (2) made for the purpose of diagnosis or treatment of a mental or emotional condition, and (3) made between the patient, their psychotherapist, or persons involved in the treatment under the direction of the psychotherapist. *See Kirk v. Ford Motor Co.*, 141 Idaho 697, 704, 116 P.3d 27, 34 (2005) (explaining that the individual claiming the privilege has the burden of proving the privilege applies to the challenged evidence).

The district court determined that the records constituted "confidential communications" under the rule because: (1) the PMP was "reasonably necessary for the transmission of the communication" and participates in the treatment of the patient; (2) the Ada County Jail was "a person reasonably necessary for the transmission of [Borek]'s communication;" and (3) the Star Pharmacy pharmacist and pharmacy staff participated in the treatment of Borek under the direction of his psychotherapist.

On appeal, the State argues the district court erred because the PMP was created for the purpose of disclosing prescription information to third parties and serves law enforcement purposes. Accordingly, it contends, the PMP is not necessary to any transmission of the prescription and the PMP does not participate in any treatment or diagnosis. As a result, the information held by the PMP is not a confidential communication under the rule. Additionally, the State asserts that the district court was wrong to conclude the Ada County Jail and Star Pharmacy records were confidential communications because Borek introduced no evidence to show the intake officer or pharmacist were participating in Borek's treatment or under the direction of his psychotherapist.

Borek counters that the purpose of the PMP is to identify illegal dispensing of medications, not to gather "evidence to be used against [the] patient/prescription drug user in a criminal trial." On the Ada County Jail and Star Pharmacy records, Borek argues that the treatment purpose of the

6

jail records is facially evident and that a pharmacist fills a prescription under the direction of a psychotherapist because the psychotherapist writes the prescription. We will address the district court's conclusions as to each set of records in turn.

1. *The PMP record is not a confidential communication because the Idaho Board of Pharmacy was unnecessary for the transmission of Borek's prescriptions and the Board did not participate in Borek's treatment.*

The PMP record that Borek sought to exclude detailed the controlled substances prescribed to Borek between May 18, 2018, and January 16, 2020, including the dates they were prescribed and filled, the dispensing pharmacy, the prescribing provider, and Borek's address and date of birth. The district court determined the PMP record was privileged after concluding the prescription information contained in the record constituted a confidential communication as defined in Rule 503(a)(4).

As previously mentioned, Rule 503(a)(4) defines a confidential communication as one not intended to be disclosed to third parties. The rule states that third parties do not include: (1) "persons present to further the interest of the patient in the consultation, examination or interview"; (2) "persons reasonably necessary for the transmission of the communication"; or (3) "persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family." I.R.E. 503(a)(4).

The district court concluded that the Idaho Board of Pharmacy ("Board") met two of these exceptions after determining that Idaho law required that Borek's prescriptions be transmitted to the Board before Borek could fill them:

> Here, based on the record before the [c]ourt, [Borek] was, and is currently, prescribed medication to treat mental health conditions. Further, it is clear that some of these medications are required to be reported to the Idaho PMP pursuant to IDAPA 27.01.01.600. *Therefore, in order for* [Borek] *to receive these prescriptions from the pharmacy, his physician or psychotherapist would have to had (sic) firstly report the prescriptions to the Idaho PMP, thereby communicating treatment to the database, which subsequently communicates the treatment to the pharmacist, who thereby authorizes and fills the prescription as directed by* [Borek's] *physician or psychotherapist—all of which directly relate back to the physician's or psychotherapist's treatment of* [Borek's] *mental health condition. Similarly, the Idaho PMP could be also be viewed in this instance as participating in the diagnosis and treatment under the physician or psychotherapist because without the Idaho PMP, the patient's—i.e.,* [Borek's]*—diagnosis and treatment would not be complete. This is something the [c]ourt cannot ignore.*

7

As such, this [c]ourt finds that [Borek]'s PMP records do fall within the definition of "confidential communication" as stated in Rule 503 because disclosure of the records to third persons, specifically to pharmacists by way of the Idaho PMP, is to those "reasonably necessary for the transmission of the communication" and "who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist." *See* I.R.E. 503(a)(4).

Accordingly, [Borek]'s Idaho PMP records are "confidential communication[s]" as defined in Rule 503.

(Emphasis added; last alteration in original.)

On appeal, the State argues that the district court erred because the PMP is not a program designed for treatment but rather is a program designed for collecting information to be shared with third parties, namely law enforcement. As such, the Board was not reasonably necessary for the transmission of the prescription information to the pharmacy, and the Board did not participate in Borek's treatment. In response, Borek argues that the PMP's law enforcement purpose does not negate the confidentiality of the records and the PMP record was not intended to be used as evidence against the patient in a criminal action. We do not address these arguments because we hold that the district court's conclusion was erroneous for another reason: the district court erred when it determined that Idaho law required Borek's medical provider to send his prescription to the Board before Borek could fill it.

At the time Borek obtained the prescriptions described in the PMP record, no Idaho statute or administrative rule required Borek's prescriber to first send Borek's prescription to the Board so the Board could then send the prescription to the pharmacy. As an initial matter, the PMP is not an entity. Rather, it is a legislatively created monitoring program that was administered by the Board at the time Borek received the prescriptions at issue. *See* I.C. § 37-2730A (2016). As a result, we construe many of the district court's statements in its written order concerning "the PMP" to actually concern the Board, because the Board administered and maintained the PMP.

Between May 2018 and January 2020, the PMP statute was silent as to when prescriptions had to be reported to the Board for inclusion in the PMP. *See id.* However, Idaho Code section 37-2726, titled "Filing Prescriptions – Database," provided that "controlled substances . . . dispensed for humans shall be filed with the [B]oard electronically in a format established by the [B]oard *or by other method as required by [B]oard rule*." I.C. 37-2726(1) (2016) (emphasis added). The Board rule in effect at the time required that "[s]pecified data on controlled substances must be reported by the end of the next business day by all drug outlets that dispense controlled substances

8

in or into Idaho and prescribers that dispense controlled substances to humans." *See* IDAPA 27.01.03.500 (2018); IDAPA 27.01.01.600 (2019).

While the Board rule failed to specify the event that triggered the "next business day" requirement, the plain language of the rule does not require that the information be reported to the Board before the prescription can be filled. Further, it would make no sense to do so because information about what is dispensed cannot be shared until after the dispensing occurs. The use of the past tense "dispensed" in section 37-2726(1) supports this interpretation. Reading section 37-2726(1) together with the applicable Board rule, we hold that when Borek obtained the prescriptions identified in the PMP record, Idaho law required that Borek's prescription be reported to the Board *after* the prescription was dispensed to Borek, not before.

The district court's conclusion to the contrary was erroneous. The only support cited by the district court for its conclusion was the IDAPA rule referenced above. As previously discussed, the rule does not support the district court's conclusion. This erroneous conclusion formed the entire basis for the district court's determinations that the Board was necessary for the transmission of a confidential communication and that the Board participated in Borek's treatment, which in turn formed the basis for its conclusion that the prescription information contained in the PMP record constituted a confidential communication. We hold that the district court erred by failing to act consistently with the legal standards applicable to the specific choices available to it when it concluded that the PMP records constituted confidential communications and were privileged under Rule 503(b)(2).

2. *While some of Borek's Ada County Jail records may be privileged, Borek failed to introduce evidence establishing that they satisfied the three elements of Rule 503(b)(2).*

In his motion in limine, Borek sought to exclude all records obtained from the Ada County Jail. The records included a medical questionnaire that contained Borek's responses to questions concerning his health. As previously discussed, the jail records also included a variety of other documents that contained information about Borek's health conditions, mental health medications, and treatment he received at the jail. Finally, the records included a fax from Star Pharmacy to the jail, listing all of Borek's prescription medications and an emergency room visit summary from Saint Alphonsus.

9

The district court concluded that the jail records were "confidential communications" because the jail staff were "reasonably necessary for the transmission of Borek's prescription information" to assist in the treatment of Borek's mental health conditions:

> Of particular importance to this [c]ourt's analysis, the Ada County Jail—and subsequently the State—became aware of [Borek]'s mental condition(s), prescribed medications for treatment of such mental condition(s), and pharmacy information through his voluntary responses to the "JailBookingMedicalQuestions." *However, an objective view of this disclosure tends to suggest that it was "not intended to be disclosed to third persons, except . . . persons reasonably necessary for the transmission of the communication. . . ."* Clearly an objective—as opposed to a subjective—purpose of the Ada County Jail obtaining this information, and thereby making a record, appears on its face to be a standard practice intended to assist in the treatment of an incarcerated individual's physical, mental, or emotional condition(s). . . . *Therefore, the questionnaire may easily be viewed as a way for the Ada County Jail to participate in the diagnosis or treatment of an incarcerated individual by being "reasonably necessary for the transmission of the communication"—i.e., being solely responsible for transmitting the communication to another in order to thereafter have the ability to provide an incarcerated individual with medication.*
>
> Here, [Borek] voluntarily disclosed information related to his mental condition(s) and prescriptions to treat such condition(s) by way of communication to jail staff, and further disclosed information relating to his pharmacy. *Additionally, this information was disclosed to a person reasonably necessary for the transmission of [Borek's] communication—i.e., to Ada County Jail personnel with the ability to gather medical information from him for the purpose of treatment.* Although not asserted by [Borek], it can be assumed, arguendo, that because he had been arrested on suspected DUI, [Borek] did not intend for this communication to be disclosed to third persons other than those necessary for treatment of his mental condition(s).
>
> Therefore, the [c]ourt finds that [Borek]'s October 2020 Ada County Jail Records, and records obtained as a result of the information garnered from the jail records, fall within the definition of "confidential communication" as stated in Rule 503 *because the disclosure of the information was a communication to a person reasonably necessary for the transmission of [Borek's] communication.*

(Citations omitted; emphasis added; third and fourth alterations in original.)

On appeal, the State limits its argument concerning the Ada County Jail records to the medical questionnaire because it asserts that is the only jail record it intends to rely on before the district court. The State argues that the district court erred in assuming that the questionnaire was for Borek's diagnosis and treatment in jail. The State asserts that Borek did not elicit any evidence that the intake officer who filled out the questionnaire was participating in Borek's diagnosis and

10

treatment under the direction of a psychotherapist. Borek counters that the treatment purpose of the Ada County Jail records is apparent on their face.

We initially note that Borek's motion sought to exclude all eighty-one pages of the Ada County Jail records, and the district court granted his motion in full. Because the State has only challenged the portion of the district court's order precluding it from introducing the medical questionnaire, we conclude the State has waived any challenge to the district court's order precluding the State from introducing the rest of the Ada County Jail records. *See Abdullah v. State*, 169 Idaho 711, 721, 503 P.3d 182, 192 (2021) (explaining that a party waives a substantive issue on appeal if it fails to support the issue with argument or authority). We therefore affirm that portion of the district court's order determining that the Ada County Jail records other than the medical questionnaire were privileged.

Turning to the medical questionnaire, we conclude that the questions and responses noted on the face of the medical questionnaire indicate that the medical questionnaire could be for purposes of diagnosing or treating Borek. If that was a purpose of the questionnaire, it is also possible that the information that Borek gave to jail staff, which is reflected on the questionnaire, was intended for persons necessary for the transmission of the communication. Borek, however, failed to admit evidence establishing these points. We therefore reverse the district court's order granting Borek's motion to exclude the Ada County Jail medical questionnaire.

There is no doubt that a number of the questions contained in the medical questionnaire sought medical information from Borek. The questions included whether Borek was taking any medications, what those medications were, if he had the medications with him, what pharmacy the Ada County Jail could contact to verify "any necessary medications" he did not have with him, and if he had current health insurance. The medical questionnaire also asked about Borek's past and present contagious diseases; observations of Borek's current physical and emotional conditions, like anger or hostility; past and current suicidal thoughts; history of substance abuse; and whether he needed to see health services.

It is possible that the jail sought this information to diagnose or treat Borek's physical and mental health conditions while he was in custody. However, it is also possible that these questions were posed for other purposes, including risk management, to ensure the safety of jail staff or to determine where Borek should be housed at the jail. Or the questionnaire could be for all these

11

purposes. It is impossible to tell, based solely on the four corners of the document, the purpose for which the jail administered the questionnaire to Borek.

As previously mentioned, the only testimony that Borek elicited at the hearing on his motion concerned whether the Ada County Jail considered the questionnaire confidential. Borek called a health service administrator from the Ada County Sheriff's Office, which runs the jail. The witness testified that she managed the jail's health services unit. She explained that inmate health records can only be obtained by subpoena, are subject to HIPAA, and would only be released without subpoena when the inmate's care was being transferred to another medical provider or corrections facility. There was no testimony as to who administered the medical questionnaire or why, who receives the information from the medical questionnaire, or how the jail uses the information obtained. In short, Borek failed to admit any evidence establishing that he provided information to jail staff because the staff were necessary for transmitting the information to someone who could assist in the diagnosis or treatment of Borek's mental health conditions.

As a result, there is no evidence in the record to support the district court's conclusion that the medical questionnaire was a confidential communication. The record lacks substantial and competent evidence supporting the district court's findings that the questionnaire was for purposes of providing medical treatment to Borek or that jail personnel sent the questionnaire to another for purposes of providing treatment or medication to Borek. We therefore hold that the district court failed to act within the outer bounds of its discretion and reverse its order granting Borek's motion in limine concerning the medical questionnaire.

Our decision today should not be read to categorically hold that the medical questionnaire is not privileged. Rather, we hold only that Borek did not meet his burden of establishing that the questionnaire met the requirements of the rule. Our opinion should not be construed to preclude Borek from renewing his argument on remand, in which case the district court must assess the evidence to determine whether the questionnaire meets the requirements of Rule 503(b)(2).

3. *Borek failed to establish that, by filling his prescription, the Star Pharmacy personnel participated in Borek's treatment under the direction of his physician or psychotherapist.*

The Star Pharmacy records that Borek sought to exclude had copies of prescription labels for Borek's medications detailing the names, dosages, prescribing provider, and Borek's name,

home address and date of birth. They also identified the dates and times that Borek obtained his prescriptions.

The district court determined that the Star Pharmacy records were privileged for two reasons. First, because Borek disclosed details concerning his prescription medications to jail staff during the booking process and disclosed that he obtained them from Star Pharmacy, and having determined the jail records were privileged, the Star Pharmacy records were also privileged. Second, the Star Pharmacy records were "confidential communications" because the prescription information was only intended to be communicated to the pharmacist and pharmacy staff, who were participating in Borek's treatment under the direction of his psychotherapist. The district court provided no analysis concerning how it reached the latter conclusion.

On appeal, the State argues that the district court erred on the first point because Borek failed to demonstrate that his communications to jail staff were privileged. On the second point, the State asserts that Borek failed to establish that Star Pharmacy was participating in his treatment under the direction of his psychotherapist. Borek responds that a pharmacist and pharmacy staff must necessarily operate under the direction of a psychotherapist to fill a prescription and, by filling the prescription, they "clearly" participated in his treatment.

We agree with the State and reverse the district court's decision because while Borek's disclosures to jail staff may constitute a privileged communication for purposes of Rule 503(b)(2), that does not automatically establish that the information contained in the Star Pharmacy records is similarly privileged. We also reverse because there is no factual basis for the district court's conclusion that the pharmacist and pharmacy staff were acting under the direction of Borek's medical provider when they filled his prescriptions.

There is no legal support for the district court's conclusion that if the jail records are privileged, then the Star Pharmacy records are also privileged. Preliminarily, and for the reasons previously discussed, Borek failed to establish that the information he disclosed to jail staff for purposes of the medical questionnaire is privileged. However, even if the information he provided to jail staff is privileged, that does not automatically establish that the use of that information to obtain records from Star Pharmacy renders the pharmacy records similarly privileged.

The district court cited no caselaw supporting its conclusion. Borek has not cited any authority holding that a "fruit of the poisonous tree" type exclusionary rule applies to privileged records. There is no indication that the State violated Borek's Fourth Amendment rights when it

13

obtained the Star Pharmacy records. Moreover, even if there were such a rule, the Star Pharmacy records held by the Ada County Jail were different than those obtained by the State through subpoena. Accordingly, the district court failed to act consistently with the legal standards applicable to the choices before it when it determined the Star Pharmacy records were privileged because the Ada County Jail records were privileged.

The district court's second basis for concluding the Star Pharmacy records were privileged also fails. Idaho law does not indicate that pharmacists operate under the direction of a medical provider when they fill prescriptions. When Borek obtained the prescriptions identified in the Star Pharmacy records, Idaho law defined a pharmacist as a licensed professional who engages in the practice of pharmacy. I.C. § 54-1705(30) (2017). The practice of pharmacy included the pharmacist's "interpretation, evaluation, and dispensing of prescription drug orders" from licensed providers, including psychotherapists. I.C. §§ 54-1704(1) (2017), 54-1705(36) (2017) (defining "prescriber" as a person licensed to prescribe in the course of their professional practice), 54-2316 (2017) (providing for prescriptive authority for psychologists licensed under title 54, chapter 23). "Dispensing" was defined as the "preparation and delivery" of a medication in a properly labeled container to or for a patient, based on a "lawful prescription drug order." I.C. § 54-1705(9) (2017).

Idaho law affords discretion to pharmacists in the practice of pharmacy. Pharmacists are subject to the requirements and discipline of the Board. *See* I.C. § 54-1718(1) (2017). While pharmacists can be subject to discipline if they fail to follow a psychotherapist's instructions in a prescription drug order, *see* I.C. § 54-1726(1)(a) (2017); IDAPA 27.01.01.104.06 (2019), Idaho law does not require the pharmacist to strictly comply with the provider's instructions. In fact, Idaho law permits a pharmacist to deviate from the instructions of the psychotherapist for specified reasons. *See* IDAPA 27.01.01.403–.404 (2019). For example, a pharmacist can unilaterally choose a drug product equivalent, partially fill the prescription, change the quantity, change the dosages, and discern whether the prescription drug order is even valid. *See* IDAPA 27.01.01.400 & .403– .404 (2019). This shows that the pharmacist exercises independent judgment when filling a prescription drug order and is not bound by the direction of the psychotherapist. The district court's conclusion to the contrary finds no support in Idaho law.

The district court's second ground for concluding the records were confidential also lacks factual support. Borek introduced no evidence establishing that Star Pharmacy was acting under the direction of Borek's psychotherapist when it filled his prescriptions. While Idaho law requires

14

a pharmacist only dispense a controlled substance pursuant to a valid prescription drug order, *see* I.C. § 37-2722(a)(c), the requirement for a prescription drug order does not establish that the pharmacist is participating in Borek's treatment under the direction of Borek's psychotherapist when the pharmacist fills the prescription. As previously discussed, Idaho law permits the pharmacist to deviate from the prescriber's direction in several respects. In short, Borek produced no evidence before the district court which established that Star Pharmacy participated in his treatment under the direction of his psychotherapist.

For these reasons, we hold that the district court failed to act within the outer boundaries of its discretion and failed to act consistently with the applicable legal standards when it concluded the Star Pharmacy records were privileged. Thus, we reverse its decision granting Borek's motion.

We take this opportunity to note that confidentiality and privilege are separate and distinct concepts. As discussed above, the testimony that Borek elicited at the hearing on his motion in limine primarily concerned whether the PMP, Ada County Jail, and Star Pharmacy records were confidential under the law, including HIPPA. It appears that Borek may have believed that, if the records were confidential under HIPAA, they were privileged under Rule 503(b)(2). If so, Borek was mistaken because confidentiality and privilege are distinct legal concepts.

Confidentiality is an ethical or, in some cases, a statutory duty to protect information from being disclosed to the general public, while an evidentiary privilege is specific to the judicial process and allows a person to prevent the introduction of evidence during a proceeding. Daniel W. Shuman & Myron S. Weiner, *The Privilege Study: An Empirical Examination of the Psychotherapist-Patient Privilege*, 60 N.C. L. Rev. 893, 893, 912 (1981). Indeed, this Court has recognized that the confidential nature of information does not automatically impute a privilege preventing disclosure of that information in a judicial proceeding. *See, e.g.*, *State v. Kiss* (*In re Contempt of Wright*), 108 Idaho 418, 419, 422–23, 700 P.2d 40, 41, 44–45 (1985) (considering whether newspersons have a privilege against disclosure of confidential sources).

A confidential communication is only one element of the psychotherapist privilege. To establish this element, Borek had to establish the communication met the definition contained in Rule 503(a)(4). A showing that the communication was confidential under HIPAA did not establish that it also met the Rule 503's definition of confidential communication. Moreover, establishing that the communication was confidential under HIPAA did not address the other elements contained in Rule 503(b)(2).

15

## IV.    CONCLUSION

For the reasons discussed, we reverse the district court's order granting Borek's motion in limine and remand for proceedings consistent with this opinion.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.